IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00340-NYW

HEATHER ANDERSON,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This civil action arises under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c) for review of the Commissioner of Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Heather Anderson's ("Plaintiff" or "Ms. Anderson") applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Parties' consent [#12], this civil action was assigned to this Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.

## BACKGROUND

Ms. Anderson, born February 25, 1962, alleges she became disabled on January 2, 2014, 2014, at 51 years-of-age, due to heart problems, chronic obstructive pulmonary disease ("COPD"),

and arthritis throughout her body.[1] *See* [#12-3 at 52-73; #12-6 at 189, 194, 214].[2]  She alleges she stopped working because of her conditions in August 2016. *See* [#12-6 at 194]. For this reason, Ms. Anderson filed her applications for DIB and SSI on January 13, 2018. *See* [#12-5 at 66].

The Social Security Administration denied Plaintiff's application administratively on April 2, 2018.  *See* [#12-3 at 52, 54]. Ms. Anderson submitted a request for a hearing before an Administrative Law Judge ("ALJ"), which ALJ Kathleen Laub (the "ALJ") held on March 7, 2019. *See* [#12-2 at 12, 26]. The ALJ received testimony from the Plaintiff and Vocational Expert Mark Schwager ("the VE") at the hearing. *See* [*id.* at 33, 45].

Ms. Anderson began her testimony by recounting her prior employment, which included work as a sorter of machine parts and a housekeeper for various hotels. [*Id.* at 35-36]. As a housekeeper, Ms. Anderson testified that she stood and walked for approximately a half day and lifted and carried no more than ten pounds. [*Id.* at 36-37]. When asked why she longer works, Ms. Anderson testified that she "get[s] tired real easy and [her] back . . . [and] knees hurt a lot." [*Id.* at 38]. Ms. Anderson explained that she cannot climb stairs or stand and walk for more than one hour. *See* [*id.* at 44]. Ms. Anderson continued that she suffers from COPD and atrial fibrillation, with both under control with medications, though she is still "tired a lot" during the day. [*Id.* at 40-41, 46]. Despite her ailments, Ms. Anderson testified that she gets up each morning and can dress herself, perform basic hygienic tasks, wash the dishes, do the laundry, vacuum, grocery shop, and cook. [*Id.* at 41, 43, 46].

---

[1] Because Ms. Anderson's appeal focuses on her fatigue, the court limits its discussion of the medical record to this alleged impairment.

[2] When citing to the Administrative Record, the court utilizes the docket number assigned by the Electronic Court Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents the court cites to the document and page number generated by the ECF system.

The VE then testified at the hearing and began by classifying Ms. Anderson's past relevant work experience as a housekeeper, a light exertion job with a specific vocational preparation ("SVP")[3] of 2, as well as a sorter, a heavy exertion job but which Ms. Anderson performed at the sedentary level with an SVP of 2. *See* [*id.* at 47]. The ALJ then asked the VE a series of hypotheticals. First, the VE testified that an individual who could perform light work, subject to (1) occasionally climbing stairs or ramps, (2) frequently balancing and stooping, and (3) occasionally kneeling, crouching, and crawling, could perform Ms. Anderson's past work as a housekeeper, both as defined and performed, and the work as a sorter as performed. [*Id.* at 47-48]. Next, the VE testified that this same individual with the additional limitation of requiring three 15-minute unscheduled breaks throughout the day due to fatigue <u>could not</u> perform Ms. Anderson's past relevant work or any work in the national economy. [*Id.* at 48]. The VE explained that his testimony was consistent with the <u>Dictionary of Occupational Titles</u> and supplemented by his experience. [*Id.* at 48-49].

On April 16, 2019, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. *See* [*id.* at 20]. The ALJ concluded that Ms. Anderson retained the residual functional capacity ("RFC") through the date of the ALJ's opinion to perform her past work as a housekeeper, thereby finding Ms. Anderson not disabled under the Act. *See* [*id.* at 15-19]. Plaintiff requested Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. *See* [*id.* at 1-3]. Plaintiff sought judicial

---

[3] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991)); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003).

review of the Commissioner's final decision in the United States District Court for the District of Colorado on February 10, 2020, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

## LEGAL STANDARDS

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove she was disabled prior to her date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. The earliest a claimant can receive SSI is the month following the month within which the claimant filed her application, and thus the claimant must establish that she was disabled on or prior to her application date. *See* 20 C.F.R. §§ 416.200, 416.335; *see also id.* § 416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application").

An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 13382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905. And when a claimant has one

or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th

Cir. 2020) (internal quotation marks omitted); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

On appeal, Ms. Anderson challenges the ALJ's decision in three ways. First, she argues that the ALJ did not properly assess Ms. Anderson's credibility.[4] Second, she argues the ALJ did not account for the functional limitations imposed by Ms. Anderson's fatigue. Third, and finally, Ms. Anderson argues that the ALJ erred in concluding that Ms. Anderson could perform her past relevant work as a housekeeper despite Ms. Anderson's functional limitations. For the following reasons, I respectfully disagree with Ms. Anderson.

**I.   The RFC Assessment**

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951,

---

[4] Though SSR 16-3p superseded SSR 96-7p and eliminated the term "credibility", SSR 16-3p offers the same guidelines for ALJs to use in assessing a claimant's subjective complaints of symptoms and pain. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). For this reason, the court will refer to this challenge as one speaking to Ms. Anderson's credibility. *See Watts v. Berryhill*, 705 F. App'x 759, 763 n.4 (10th Cir. 2017).

954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")). The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

The ALJ determined that Ms. Anderson retained the RFC to perform light work, subject to occasionally climbing stairs and ramps; occasionally crawling and crouching; and frequently balancing and stooping. [#12-2 at 15]. Ms. Anderson argues that the ALJ erred in rendering this RFC assessment because the ALJ did not properly assess Ms. Anderson's credibility, did not account for any limitations imposed by Ms. Anderson's chronic fatigue, and did not consider how Ms. Anderson could perform her past work as a housekeeper with the physical limitations identified in the RFC. *See* [#13; #17]. I consider each in turn.

### A. Credibility

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Raymond v. Astrue*, 621 F.3d 1269, 1272-73 (10th Cir. 2009) (brackets and internal quotations omitted). But "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotations omitted). In addition to considering the objective medical evidence, the ALJ must also consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of her pain; aggravating and mitigating factors; any medication

7

taken and its effectiveness in providing relief; other treatment received aside from medications; other measures utilized to alleviate pain, i.e., lying down; and any other factors that may bear on the claimant's functional limitations.  *See* 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010).  But an ALJ "need not make a formalistic factor-by-factor recitation of the evidence," and the court will uphold the ALJ's credibility determination if the ALJ "sets forth the specific evidence [s]he relies on[.]"  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (explaining that "common sense, not technical perfection, is [the court's] guide.").

Ms. Anderson argues that the ALJ erred in assessing Ms. Anderson's credibility because the ALJ relied on boilerplate language and did not affirmatively link her credibility determination to substantial evidence.  *See* [#13 at 7-9; #17 at 1-2].  The Commissioner responds that the ALJ need not provide a factor-by-factor recitation of the evidence but, regardless, considered Ms. Anderson's subjective complaints of pain, the objective medical evidence, and the opinion medical evidence in assessing Plaintiff's RFC and credibility.  [#14 at 7].  The court respectfully agrees with the Commissioner.

In assessing Ms. Anderson's credibility, the ALJ recounted Ms. Anderson's allegations of disability stemming from her "severe physical health problems."  [#12-2 at 16].  In doing so, the ALJ discussed Ms. Anderson's hearing testimony, including that Ms. Anderson complained of cardiac, respiratory, and knee problems, which caused Ms. Anderson pain and fatigue as well as difficulties climbing stairs.  [*Id.*].  The ALJ continued with a recitation of the medical treatment Plaintiff received for her various ailments and the medication Plaintiff continues to use—most of which has kept Ms. Anderson's ailments under control.  *See* [*id.*].  The ALJ also discussed Ms. Anderson's daily activities, which included personal care, cooking, laundry, vacuuming, grocery

8

shopping and walking to the grocery store, and watching television. [*Id.*]. From this, the ALJ concluded that Ms. Anderson's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [*Id.*].

Contrary to Ms. Anderson's assertions, the ALJ did not rely on boilerplate language to discredit Ms. Anderson's subjective complaints of pain. To be sure, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has warned ALJs that "use of this same boilerplate paragraph is insufficient, in the absence of a more thorough analysis, to support [their] credibility determination[s.]" *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (emphasis added). Unlike the ALJ in *Knight ex rel. P.K. v. Colvin*, 756 F.3d at 1176, who "discussed little of the hearing testimony and mentioned credibility only generically," the ALJ here provided a thorough analysis of the reasons and evidence cutting against Ms. Anderson's subjective complaints of pain. The ALJ discussed Ms. Anderson's hearing testimony and complaints of disabling limitations, various ailments and medications, limited treatment for those ailments, and daily activities. *See* [#12-2 at 16]. She continued with a detailed discussion of the objective medical evidence, including the few medical source opinions, and concludes that Ms. Anderson's "allegations are not fully persuasive concerning the extent of her functional limitations." [*Id.* at 16-19]. Nothing more is required. *See Keyes-Zachary*, 695 F.3d at 1167.

Nor does Ms. Anderson direct the court to any evidence the ALJ either failed to consider or that corroborates Ms. Anderson's allegations of disabling ailments. And, as explained below, the court is not convinced that the ALJ failed to consider all of Ms. Anderson's ailments in formulating Ms. Anderson's RFC. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the

ALJ's credibility and RFC determinations are inherently intertwined."). Without more, Ms. Anderson's challenge invites this court to reweigh the evidence before the ALJ, which is something this court cannot do. *See Olson v. Comm'r, SSA*, --- F. App'x ----, ----, 2021 WL 71255, at *4 (10th Cir. Jan. 8, 2021) (concluding that the plaintiff's general challenges to the ALJ's credibility determination amounted to "an argument that this court [] reweigh the evidence," which the court cannot do). Thus, I find no error in the ALJ's credibility assessment. *See Trujillo v. Comm'r, SSA*, 818 F. App'x 835, 842-45 (10th Cir. 2020) (finding no error where the ALJ discussed the plaintiff's daily activities and the medical record in discrediting the plaintiff and explaining that the court cannot reweigh the evidence); *Ortiz v. Comm'r, Soc. Sec. Admin.*, No. 17-CV-01407-NYW, 2018 WL 2045891, at *9 (D. Colo. May 1, 2018) (upholding the ALJ's credibility assessment where the ALJ's use of boilerplate language was bolstered by her examination of the plaintiff's daily activities, objective medical evidence, and medical source opinions).

### B.     Fatigue

As mentioned, the ALJ must consider all medically determinable impairments, whether severe or not, when assessing a claimant's RFC. *See Ray*, 657 F. App'x at 734. In doing so, the ALJ must explain how evidence supports her specific functionality findings. *See Hendron*, 767 F.3d at 954. And the ALJ may not simply rely on her step two conclusions that ailments are non-severe to disregard those ailments when formulating a claimant's RFC. *Wells*, 727 F.3d at 1068-69. If, however, substantial evidence supports the RFC assessment, the court will not second-guess that determination. *See Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007).

Ms. Anderson argues the ALJ failed to account for the limitations caused by Ms. Anderson's chronic fatigue, a secondary condition caused by Ms. Anderson's severe impairments.

[#13 at 9, 11; #17 at 2-4]. According to Ms. Anderson, this error led to the ALJ including no limitations in the RFC due to fatigue despite doing so in her hypothetical to the VE. *See* [#13 at 9-11, #17 at 2-4]. The Commissioner counters that the ALJ indeed considered Ms. Anderson's alleged fatigue within the context of Ms. Anderson's subjective complaints but discredited those allegations. [#14 at 7]. Further, the Commissioner argues the ALJ was not required to exhaustively consider the fleeting mentions of fatigue within the medical record, as it was Ms. Anderson's burden to establish that her fatigue caused disabling limitations, and the ALJ did not need to rely on the VE's testimony regarding a hypothetical individual needing regular breaks due to fatigue. *See* [*id.* at 7-9]. I respectfully agree with the Commissioner.

First and foremost, the record contains only sparse mention of Ms. Anderson's fatigue, but they do not demonstrate any functional limitations associated with fatigue. *E.g.*, [#12-3 at 63; #12-7 at 248; #12-8 at 258, 293, 310; #12-10 at 402]. Ms. Anderson must do more than establish the presence of a condition; rather, she must demonstrate that the condition poses limitations on her ability to perform work-related tasks. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016) ("Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations."). The only suggestion that Ms. Anderson's fatigue interfered with her functionality came from Ms. Anderson herself and, as explained, the ALJ sufficiently discredited these allegations. Otherwise, Ms. Anderson failed to demonstrate that her fatigue substantially interfered with her functionality. *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) ("[I]n cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ

11

may ordinarily require counsel to identify the issue or issues requiring further development." (internal quotations omitted)).

Next, to the extent Ms. Anderson contends that the ALJ was required to discuss every piece of evidence documenting Ms. Anderson's alleged fatigue, such an undertaking is not required. Indeed, there is no requirement that the ALJ identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 947, 949. And any perceived error in this regard is harmless. *See Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (explaining that courts "may employ a harmless-error analysis sua sponte on appeal when . . . the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings."). This is because the record does not support Ms. Anderson's assertions that her fatigue imposes substantial limitations.

Nor is the court convinced that the ALJ erred by including fatigue-related limitations in a hypothetical to the VE but then choosing not to include those limitations in Ms. Anderson's RFC. An ALJ's hypothetical "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995); *accord Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (explaining that an ALJ need not "exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning."). But an ALJ is "not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record." *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995). Such is the case here because the record did not support the fatigue-based limitations the VE testified to. And it remains the ALJ's responsibility to determine "a claimant's RFC from

the medical record." *Chapo v. Asture*, 682 F.3d 1285, 1288 (10th Cir. 2012) (internal quotations omitted).

While the record may contain evidence of greater limitations than the ALJ found, which is not clear, it is the ALJ's, not the court's, responsibility to resolve those inconsistencies. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (explaining that the ALJ is "entitled to resolve such evidentiary conflicts"). To find otherwise would require this court to reweigh the evidence, which it may not do, *see Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000), and the court likewise cannot "displace the agency's choice between two fairly conflicting views," *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) (brackets omitted). Thus, I conclude that the ALJ did not error by failing to impose limitations on Ms. Anderson's RFC due to fatigue.

## II.     Step Four

At step four, it is Ms. Anderson's burden to establish that she is unable to perform her past employment as a housekeeper "*both* as [she] actually performed that work in the past *and* as it is generally performed in the national economy." *Adams v. Colvin*, 616 F. App'x 393, 394 (10th Cir. 2015) (emphasis in original) (citing *O'Dell v. Shalala*, 44 F.3d 855, 859-60 (10th Cir. 1994); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993)). *See also* SSR 82-61, 1982 WL 31387, at *2 (explaining a claimant will be found "not disabled" if she can perform her particular past relevant job or as the job is performed generally throughout the national economy). The Commissioner's regulations, however, mandate that the ALJ make specific factual findings as to a claimant's ability to perform past relevant work, *see* SSR 82-62, 1982 WL 31386, at *3, but this does not mean the ALJ is to act as the claimant's advocate, *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993). These specific findings include a determination of (1) the claimant's RFC, (2) the physical and mental demands of the claimant's

past relevant work, and (3) the claimant's ability to meet those job demands despite her mental and physical limitations. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (detailing the three phases of step four).

Ms. Anderson argues that the ALJ erred at step four because the ALJ did not make specific factual findings as to how Ms. Anderson could perform her past work as a housekeeper despite the functional limitations assessed in the RFC. [#13 at 12-13; #17 at 5-8]. Ms. Anderson further avers that the Occupational Information Network ("O*NET"), available at https://www.onetonline.org/, describes the occupation of housekeeping as requiring bending, stooping, kneeling, and balancing at least 50% of the day, and the ALJ never explained how Ms. Anderson could perform such physical activities. [#13 at 13; #17 at 5-6]. The Commissioner counters that the ALJ properly relied on the VE's testimony at step four, which was consistent with the Dictionary of Occupational Titles, and the ALJ was not required to explain any inconsistencies between the Dictionary of Occupational Titles and O*NET. [#14 at 10-13]. I respectfully agree with the Commissioner.

At step four, the ALJ concluded that, in considering Ms. Anderson's RFC and the demands of a housekeeper as generally performed in the national economy, Ms. Anderson could perform her past relevant work as a housekeeper. [#12-2 at 19]. In reaching this conclusion, the ALJ relied on the VE's testimony that an individual with the same limitations assessed in Ms. Anderson's RFC could perform the occupation of housekeeper. *See* [*id.* at 19-20]. I find no error in this conclusion.

"An ALJ may rely on information supplied by the VE at step four." *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ properly did so here. At the hearing, the ALJ asked the VE to consider whether an individual, limited to light work and subject to certain restrictions, such as occasionally climbing ramps or stairs, frequently balancing and stooping, and occasionally

kneeling, crouching, and crawling, could perform Ms. Anderson's past relevant work as a housekeeper. [#12-2 at 47-48]. The VE answered that such an individual could perform the work of a housekeeper, both as defined in the Dictionary of Occupational Titles and as performed by Ms. Anderson. *See* [*id.* at 48]. The VE attested that his testimony was consistent with the Dictionary of Occupational Titles and his thirty-years of experience. [*Id.*]. And the ALJ is permitted to rely on the VE's classification of a claimant's past relevant work. *See Andrade*, 985 F.2d at 1051.

The ALJ then included these limitations in her RFC assessment—an assessment supported by substantial evidence, as found above. Further, as explained above, the court has found no error in the ALJ's line of questioning regarding the proposed limitations on Ms. Anderson's functionality, and Ms. Anderson did not object to the ALJ's line of questioning at the hearing. *See Roybal v. Colvin*, No. 14-CV-01099-KMT, 2015 WL 5579434, at *8 (D. Colo. Sept. 23, 2015) ("The ALJ is permitted to rely upon the testimony of a vocational expert to determine how a job is generally performed in the economy."). Thus, the ALJ properly relied on the VE's testimony in reaching her step four conclusion. *See Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 825 (10th Cir. 2011) (finding no error at step four where the ALJ "relied on the VE's testimony, which was consistent with the information in the Dictionary of Occupational Titles, in comparing Ms. Zaricor-Ritchie's RFC with the physical and mental demands of the dishwashing job and found that she could perform that job as actually performed despite the identified mental impairments.").

Finally, the court finds no error in the ALJ's purported failure to consider any inconsistencies between the VE's testimony and the O*NET. Ms. Anderson provides no authority, and the court has found none, requiring an ALJ to do so. *See Anders v. Colvin*, No. 2:14-CV-00610-EJF, 2015 WL 5555745, at *11 (D. Utah Sept. 18, 2015) ("Nothing in Tenth Circuit case

law or SSR 00–4p requires an ALJ to explain any conflict between VE testimony and information in the O*Net or OOH, where the VE testimony does not conflict with information included in the DOT."). Indeed, the Social Security Administration has explained that it does not utilize O*NET in its "disability adjudication process [because] it does not describe the physical requirements of occupations at the level of detail needed for claims adjudication." *See* Soc. Sec. Admin., OIS Project Frequently Asked Questions: Why are you developing a new occupational information system (OIS)? Why can't the Department of Labor (DOL) update the Dictionary of Occupational Tiles (DOT), or why can't you use the Occupational Information Network (O*NET), *available at* http://www. ssa.gov/disabilityresearch/ois_ project_faqs.html.

In sum, the court finds no error at step four.

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.

DATED:  March 12, 2021                              BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge